Filed 8/18/21  P. v. Alexander CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ADRIANNA ALEXANDER,<br><br>Defendant and Appellant. | 2d Crim. No. B304691<br>(Super. Ct. No. SA099767)<br>(Los Angeles County) |

Adrianna Alexander appeals the judgment entered after a jury convicted her of attempted second degree robbery (Pen. Code,[1] §§ 211, 664).  Imposition of sentence was suspended and appellant was placed on probation for five years subject to various terms and conditions.  Appellant raises claims of evidentiary, instructional, and cumulative error.  We affirm.

---

[1] All statutory references are to the Penal Code.

## STATEMENT OF FACTS
### *Prosecution*

On July 3, 2018, Jose Gudino was working at a Party City store located on the corner of South Sepulveda Boulevard and Exposition Boulevard when appellant approached him and asked if he was the manager. Gudino, who was crouched down stocking shelves, looked up at appellant and replied in the affirmative. Appellant was holding a canvas bag and was wearing sunglasses, a wig, and a black jogging suit with a white stripe. Appellant told Gudino that she was robbing him and had a gun in her bag and ordered him to go to the front of the store and give her the money from the cash registers.

Gudino stood up, had a face-to-face view of appellant from approximately one foot away, and began walking with her toward the cash registers. As they were walking, Gudino used his hand-held radio to tell another employee that the store was being robbed and to call the police. As Gudino and appellant neared the front of the store, the other employee loudly announced that he had called the police and they were on their way. Appellant ran out the front door and Gudino tried to pursue her, but appellant held the door closed from the outside.

As appellant was holding the front door closed, Keia McDaniel attempted to enter the store as a customer. Appellant bumped into McDaniel near the door before running away. McDaniel asked Gudino what had happened and he told her that appellant had just tried to rob the store. McDaniel ran after appellant while Gudino went outside and saw appellant running east on Exposition Boulevard. Gudino called 911 and described appellant as a Black woman in her 30's wearing a black jogging suit.

McDaniel followed appellant for a few blocks through an alley on Tilden Avenue, then lost sight of her as she ran between a black car, a white car, and a gray or silver subcompact Hyundai. A construction worker on Tilden Avenue asked McDaniel if she was "looking for the black chick" and told her he had just seen her get into the Hyundai. The construction worker also showed McDaniel a photograph he had taken of the Hyundai's license plate and McDaniel made a notation of the license plate number on her cell phone.

When Los Angeles Police Officer James Allen and his partner arrived in response to the 911 call, McDaniel flagged them down and related what had happened. She also showed the officers the license plate number of the Hyundai in which appellant had fled. It was subsequently determined that from May 3, 2018 until August 3, 2018, appellant had rented the Hyundai from an Enterprise Rent-A-Car branch (Enterprise) on Sepulveda Boulevard.

On July 11, Gudino identified appellant from a six-pack photographic lineup as the perpetrator of the attempted robbery and emphasized that he was "a hundred percent sure" of the identification. Gudino also identified appellant at the preliminary hearing and at trial.

Enterprise's records showed that on June 18, 2018, appellant was left a voicemail message stating that the credit card she wanted to use for an extension of her rental of the Hyundai had been declined. Appellant responded that she would pay for the extension on June 22, but she did not do so. On June 25, Enterprise left appellant a voicemail message stating that the company would be initiating the "conversion process," which applies when a customer fails to return or pay for a car. On July

3

6 and July 9, Enterprise left appellant additional messages. On July 10, appellant told an Enterprise representative she would call back by July 12 to pay off the delinquent balance. On July 13 and 24, Enterprise sent appellant additional messages demanding payment. Appellant finally returned the car on August 3 and paid the full due balance of $2,637.59.

### *Defense*

Dr. Mitchell Eisen, a psychologist, testified for the defense as an expert on eyewitness identifications. Dr. Eisen explained that the passage of time can affect the reliability of an identification. Photographs or information received after an event can alter or erroneously "fill in the gaps" in a witness's memory of the event or a perpetrator's appearance. Although cross-racial identifications can be accurate, it is more difficult for a person to identify someone of a different race. Moreover, witnesses often assume that one of the individuals included in a lineup is the perpetrator. There are cases in which witnesses have expressed 100 percent certainty in an identification but physical evidence has later proven them wrong. The doctor acknowledged, however, that having a face-to-face view of a witness in good lighting conditions makes it a "heck of a lot easier" to make an accurate identification.

## DISCUSSION

### *Evidence Of Appellant's Rental Car Payment Delinquency*

Appellant contends the trial court erred in admitting the evidence regarding her difficulties in making her rental car payments as proof of her motive to commit the attempted robbery. The People concede that the evidence should have been excluded but contend the error was harmless. We accept the

4

People's concession of error and agree that appellant suffered no resulting prejudice.

Over appellant's objection, the court admitted the challenged evidence and reasoned "[t]he fact that you owe people money is motive for committing a robbery." It is well-settled, however, that "a defendant's poverty generally may not be admitted to prove a motive to commit a robbery or theft; reliance on such evidence is deemed unfair to the defendant, and its probative value is outweighed by the risk of prejudice." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1076; accord, e.g., *People v. Carrillo* (2004) 119 Cal.App.4th 94, 101-102.) Although there are exceptions to this rule (see, e.g., *People v. Edelbacher* (1989) 47 Cal.3d 983, 1023-1024 [evidence of murder defendant's financial problems admissible to prove financial gain special circumstance allegation]), the People concede that no such exception applies here.

Although the court thus erred in admitting the evidence, reversal is not required because it is not reasonably probable appellant would have achieved a more favorable result had the evidence been excluded. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Carrillo, supra*, 119 Cal.App.4th at pp. 103-104 [applying *Watson* standard in reviewing erroneous admission of evidence of defendant's poverty to prove motive].) Gudino was able to observe appellant face-to-face during the crime and subsequently identified her from a photographic lineup. Moreover, other evidence established that appellant fled the scene in the Hyundai she was renting. As the People aptly put it, "[w]hile no single person saw the perpetrator's entire flight from the Party City store to the car, there can be no reasonable doubt that the woman seen by Gudino, and then McDaniel, and then

the unnamed construction worker was the same person—appellant." Appellant's claim that she was prejudiced by the erroneous admission of the challenged evidence thus fails.

### *CALCRIM No. 315*

Appellant claims the court violated her due process rights by instructing the jury pursuant to CALCRIM No. 315 that it could consider a witness's certainty in evaluating eyewitness testimony identifying the defendant as the perpetrator.[2]  We agree with the People that this claim is both forfeited and without merit.

Appellant did not object to the giving of CALCRIM No. 315 below and the trial court had no sua sponte duty to modify the instruction.  Accordingly, appellant's claim that the instruction should have been modified to omit any reference to the certainty of an eyewitness identification is forfeited.  (*People v. Sanchez* (2016) 63 Cal.4th 411, 461 [recognizing that "[i]f defendant had wanted the court to modify the [certainty] instruction, [s]he should have requested it.  The trial court has no sua sponte duty to do so"]; see also *People v. Ward* (2005) 36 Cal.4th 186, 213 [recognizing same].)

In any event, while the appeal was pending our Supreme Court rejected appellant's claim that the challenged portion of CALCRIM No. 315 violated her due process rights.  (*People v. Lemcke* (2021) 11 Cal.5th 644 (*Lemcke*)).  The court nevertheless

---

[2] CALCRIM No. 315 states in pertinent part:  "You have heard eyewitness testimony identifying the defendant.  As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony.  [¶]  In evaluating identification testimony, consider the following questions:  [¶] . . . [¶]  How certain was the witness when he or she made an identification?"

6

recognized the instruction has "the potential to mislead jurors" given the "near unanimity in the empirical research that '"under most circumstances, witness confidence or certainty is not a good indicator of identification accuracy."'" (*Id.* at p. 665.) The court referred the matter to the Judicial Council and the council's advisory Committee on Criminal Jury Instructions "to evaluate whether or how the instruction might be modified to avoid juror confusion regarding the correlation between certainty and accuracy." (*Id.* at p. 647; accord *id.* at p. 668.) The court also exercised its supervisory powers to "direct that until the Judicial Council has completed its evaluation, trial courts should omit the certainty factor from CALCRIM No. 315 unless the defendant requests otherwise." (*Id.* at pp. 647-648; accord *id.* at p. 669.)

As the court held in *Lemcke*, the challenged portion of the instruction does not expressly equate certainty with accuracy. (*Lemcke, supra*, 11 Cal.5th at p. 657.) Even if the instruction were susceptible to such an interpretation, appellant—like the defendant in *Lemcke*—presented Dr. Eisen's expert testimony challenging that interpretation. (*Id.* at pp. 657-658.) Moreover, the jury instructions as a whole made clear that the challenged portion of CALCRIM No. 315 did not lower the prosecution's burden of proof. (*Lemcke*, at p. 658.) The jury was instructed pursuant to CALCRIM Nos. 220 and 315 that appellant was presumed innocent and that the People had the burden of proving her guilt beyond a reasonable doubt. (*Ibid.*) The jury was further instructed pursuant CALCRIM No. 226 that "[p]eople sometimes honestly forget things or make mistakes about what they remember" and that it was the jury's sole province to "judge the credibility or believability of the witnesses." (*Lemcke*, at p. 658.) Appellant also had a full and fair opportunity to cross-examine

Gudino regarding his identification of her. (*Id.* at p. 660.) Under the circumstances, the certainty instruction did not violate appellant's due process rights or otherwise render her trial fundamentally unfair. (*Id.* at p. 661.) Given the strong evidence of appellant's guilt, it is also clear that any error in giving the instruction was harmless regardless of the standard of review.

### *Cumulative Error*

Appellant finally contends that the cumulative effect of the alleged errors compels the reversal of her conviction. We are not persuaded. Although we have concluded that the court erred in admitting the evidence regarding her financial difficulties, we also concluded that the error was not prejudicial. We rejected appellant's claim of instructional error and concluded that any such error was harmless beyond a reasonable doubt. "We likewise conclude that when the errors are considered together, their cumulative effect did not result in substantial prejudice to [appellant]." (*People v. Price* (1991) 1 Cal.4th 324, 465.)

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.          YEGAN, J.

8

Upinder S. Kalra, Judge
Superior Court County of Los Angeles
_____

Teresa Biagini, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, and Scott A. Taryle, Supervising Deputy Attorneys General, for Plaintiff and Respondent.